O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| WBS, INC., a California Corporation, | ) ) ) | Case No. CV 15-07251 DDP (JCx) |
| Plaintiff, | ) ) | |
| v. | ) ) | **ORDER GRANTING MOTION FOR ATTORNEY FEES [Dkt. No. 255]** |
| JUAN CROUCHER, an individual; CROUCIER PRODUCTIONS, INC., a California Corporation; ROB HOFFMAN, an individual; ONE MANAGEMENT, a business of unknown formation, | ) ) ) ) ) ) ) ) | [Dkt. 183 (closed case)] |
| Defendants. | ) ) | |

Presently before the court on remand from the United States Court of Appeals for the Ninth Circuit is Defendant Juan Croucier's Motion for Attorney Fees (Dkt. 183). Having considered the submissions of the parties, oral argument, Defendant's supplemental filing, and the objections thereto, the court grants the motion and adopts the following Order.

**I.   Background**

The facts of this case are set forth in great detail in this

court's prior orders. In short, Plaintiff asserted that in 1997, a partnership that owned trademarks associated with the rock band RATT assigned its rights in the marks to Plaintiff. Plaintiff brought trademark infringement claims in this Court against Defendants and Defendant Croucier filed a counterclaim against Plaintiff.

Croucier and Plaintiff brought cross-motions for summary judgment on Plaintiffs' infringement claims. This Court denied Plaintiff's motion for summary judgment and granted Croucier's motion, concluding that the evidence established beyond dispute that the supposed 1997 assignment of the trademarks to Plaintiff was invalid. Plaintiff sought reconsideration of the court's order, arguing, among other things, that Croucier was collaterally estopped and barred by the Rooker-Feldman doctrine from challenging the validity of the assignment of the marks to Plaintiff. The court denied Plaintiff's motion for reconsideration without considering the merits of Plaintiff's collateral estoppel argument, observing that Plaintiff's new evidence in support of that argument could have been, but was not, presented at the summary judgment stage. The court further explained that the Rooker-Feldman doctrine is inapplicable because Croucier was not a party to any related state court suit. Although the court also observed that Plaintiff's counsel had repeatedly violated the letter and spirit of the local rules of this district, the court nevertheless denied without comment Croucier's motion for attorney's fees.

The parties both appealed, on various grounds. In an unpublished disposition, the Ninth Circuit affirmed in all respects, save one. (Dkt. 245) With respect to reconsideration of

summary judgment, the appellate court agreed that the <u>Rooker-Feldman</u> doctrine is inapplicable and addressed Plaintiff's collateral estoppel argument on the merits. The court explained that estoppel or issue preclusion does not apply because, even if Croucier's partner was a party to a state-court proceeding alleged to have preclusive effect, Croucier himself was not such a party, and mere partnership does not establish privity under California law. (Dkt. 245 at 6-7.)

The appellate court did, however, vacate this Court's denial of Croucier's motion for attorney's fees. As the court observed, discretionary decisions regarding attorney's fees may be set aside "if the record does not support the district court's decision." (Dkt. 245 at 8 (quoting <u>Mattel, Inc. v. Walking Mountain Prods.</u>, 353 F.3d 792, 815 (9th Cir. 2003). The Ninth Circuit remanded for this Court to determine whether attorneys' fees are appropriate "in light of the objectively unreasonable arguments WBS has advanced, its vexatious approach to this litigation, and WBS' repeated failures to follow procedural rules." (Dkt. 245 at 8.)

**II. Discussion**

A. Legal Standard

Courts may award reasonable attorney fees to the prevailing party in "exceptional" trademark cases. 15 U.S.C. § 1117(a). Courts looks to the totality of the circumstances in determining whether a case is exceptional, such that it "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." <u>SunEarth, Inc. v. Sun Earth Solar Power Co.</u>, 839 F.3d 1179, 1180

3

(9th Cir. 2016) (quoting Octane Fitness, LLC v. ICON Health & Fitness, Inc., 572 U.S. 545, 554 (2014)). Relevant factors include, but are not limited to, "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." Octane Fitness, 572 U.S. at 554 n.6 (quoting Fogerty v. Fantasy, 510 U.S. 517, 534 n. 19 (1994)). The exceptional case standard applies equally to prevailing plaintiffs and prevailing defendants. Gracie v. Gracie, 217 F.3d 1060, 1071 (9th Cir. 2000).

B. This is an "exceptional" case

This Court has, notwithstanding its initial denial of attorney fees, repeatedly highlighted Plaintiff's improper litigation conduct. In its summary judgment order, for example, the court noted that Plaintiff had violated several local rules and unconvincingly attempted to shift blame for those violations to Croucier's counsel. (Dkt. 181 at 1 n.1). The court further cautioned Plaintiff's counsel to comply with all procedural rules, on pain of sanctions. Id. Nevertheless, the violations continued. As set forth in this Court's order denying reconsideration, Plaintiff failed to timely file documents, filed unauthorized briefs, and provided explanations for those violations that were not credible. (Dkt. 222 at 10.) These examples, though not exhaustive, are illustrative of Plaintiff and its counsel's unreasonable approach to this litigation.[1]

---

[1] Plaintiff's baseless ex parte requests, requests for sanctions, and allegations of fraud and deceit against Croucier's counsel are too numerous to list here in full.

4

The bulk of Plaintiff's opposition to Croucier's fee motion is devoted to the argument that Plaintiff had a "legal and reasonable basis for its claims." As an initial matter, Plaintiff misstates the relevant standard, citing to several non-binding and outdated authorities that do not apply the "exceptional case" framework. (Opp. at 4:28-5:12.) Furthermore, the Ninth Circuit has rejected Plaintiff's contention, finding that the arguments Plaintiff advanced were "objectively unreasonable." This Court cannot, therefore, avoid the conclusion that Plaintiff's position was substantively weak.

In his objections to Croucier's supplemental briefing, Plaintiff suggests that Plaintiff's litigation position could not have been meritless because the Ninth Circuit found that Plaintiff's appeal was not frivolous or "wholly without merit." (Dkt. 254 at 1:15-24.) Plaintiff appears, however, to conflate distinct issues. Croucier sought attorney fees on appeal under 15 U.S.C. § 1117(a), and Plaintiff failed to oppose the motion. (Dkt. 247, 248.) The Ninth Circuit found the appeal "exceptional" because Plaintiff (1) advanced the same "objectively unreasonable" arguments made in Plaintiff's motion for reconsideration of this Court's summary judgment order and (2) pursed an unreasonable, "scattershot" approach on appeal, challenging "almost every adverse determination of the district court regardless of merit." (Dkt. 247 at 2.) The Ninth Circuit therefore granted fees under the Lanham Act. (Id.)

The court did not, however, grant fees pursuant to Federal Rule of Appellate Procedure 38 or 28 U.S.C. § 1927. The former allows an award of "just damages" and costs if a court of appeals

determines that an appeal is frivolous, while the latter allows for fees to be levied against any attorney or other person who "multiplies the proceedings in any case unreasonably and vexatiously." Fed. R. App. Pro. 38; 28 U.S.C. § 1927. In denying fees under Rule 38 and Section 1927, the Ninth Circuit explained that the appeal was not frivolous because "[t]he result of the appeal was not obvious at the outset and the 'claims of error' were not 'wholly without merit.'" (Dkt. 247 at 3.)

The Ninth Circuit's characterization of Plaintiff's appeal in the sanctions context does little, however, to support Plaintiff's argument that this case is not exceptional for Lanham Act purposes. First, the circuit found that even the appeal *was* exceptional under the Lanham Act, and awarded appellate fees on that basis. Second, the circuit's substantive decision on Croucier's appeal of the attorney fees issue is unambiguous in its description of "the unreasonable arguments WBS has advanced, its vexatious approach to this litigation, and WBS' repeated failures to follow procedural rules." (Dkt. 245 at 8.) See Mattel, 353 F.3d at 815 ("[W]e will only remand if the record does not support the district court's decision."). That pronouncement, in conjunction with this Court's observations, leaves little doubt that this trademark case stands out from others with respect to both the substantive weakness of Plaintiff's litigation position and the unreasonable manner in which the case was litigated. This case therefore qualifies as exceptional under the Lanham Act, and the court finds that a grant of attorneys' fees is warranted.

C. Amount of fees

The court turns, then, to the quantum of fees. Having reviewed the submissions of the parties, the court finds that Defendant's lodestar figure of $232,927.50 is the reasonable product of a reasonable number of hours at reasonable hourly rates.[2] [3] The court further notes that Plaintiff provides virtually no substantive argument as to why the amount sought is unreasonable. Plaintiff does not, for example, dispute that counsel's rates are reasonable. Instead, Plaintiff asks that the court strike counsel's entire billing statement, contending that "[a] number of the hours calculated by the Defendant were redundant or excessive," and that counsel intentionally obfuscated the nature of certain billed items. (Opp. at 20:19-22.) Plaintiff does not, however, identify any particular item that is redundant or excessive, and his characterization of the billing statement is simply inaccurate. Indeed, Defendant's counsel Stephen Doniger does not appear to have billed more than 6.9 hours for any single item, while the vast majority of billed items are relatively fine-grained entries of less than one hour. Plaintiff's suggestion that counsel's billing statements are the product of defense counsel's "propensity for falsehoods and fabrications" is neither persuasive nor productive. (Opp. at 20:23.)

D. Sanctions against Plaintiff's counsel

Defendant's fee motion also seeks to hold Plaintiff's counsel responsible for some fees pursuant to 28 U.S.C. § 1927. As stated

---

[2] Croucier's attorneys' rates range from a relatively modest $315 per hour to no more than $565 per hour.

[3] Although Defendant previously sought fees in the amount of $253,528, his most recent filing seeks the lower sum of $232,927.50. (Dkt. 252 at 9.)

above, Section 1927 allows for fees to be levied against any attorney or other person who "multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. Although, as explained above, the Ninth Circuit denied Defendant's request for appellate fees under Section 1927, the Ninth Circuit's substantive decision remanding this fee matter to this Court does not appear to foreclose a fee award against Plaintiff's counsel. Indeed, the court's references to Plaintiff's "vexatious approach to this litigation" and "repeated failures to follow procedural rules" suggest that such an award would be justified. In light of that suggestion, and upon further review of the record, this Court finds that Plaintiff's counsel Drew Sherman and Adli Law did unreasonably and vexatiously multiply the proceedings in this case. The court further finds that Defendant's submissions adequately identify the particular billing items attributable to counsel's improper conduct.[4]

Although that list is too long to re-state here, and this Court declines to consider Plaintiff's counsel's conduct in other, unrelated matters, counsel's response to the instant fee motion is representative of Plaintiff's approach to this litigation. After Defendant filed this motion, Plaintiff filed a motion to strike the fee motion for failure to meet and confer, even though Plaintiff (1) conceded that the parties had met and conferred regarding the

---

[4] After remand from the Ninth Circuit, Defendant filed supplemental exhibits, including a billing statement that identifies particular line items attributable to Plaintiff's counsel's unreasonable conduct. Plaintiff's objections to Defendant's supplemental submissions do not include any objections to these particular exhibits, nor does Plaintiff address the supplemental billing statements in any way.

8

fee motion and (2) himself failed to meet and confer prior to filing the motion to strike. (Dkt. 188.) Plaintiff's counsel also requested sanctions against Defendant's counsel, as he has frequently done. (Id.) Plaintiff then filed an ex parte application to shorten time for the hearing on the motion to strike, seeking to preempt the fee motion. (Dkt. 189.) This Court summarily denied both the motion to strike and ex parte application. (Dkt. 191, 229.) Plaintiff also filed an improper motion for reconsideration, which was stricken, before then correctly filing the same motion, which, as discussed in this Court's order denying reconsideration, raised meritless arguments and baselessly accused Defendant's counsel of fraud on the court.[5] (Dkt. 192, 198.) Only then did Plaintiff finally file an opposition to Defendant's fee motion. As discussed above, that opposition included little relevant substantive argument and again sought sanctions against Defendant's counsel and accused him of fraud. (Dkt. 202.)

Although the pattern and substance of Plaintiff's numerous filings might itself support a sanctions award under Section 1927, evidence in the record confirms that counsel often acted in bad faith to prolong the litigation, with no legitimate purpose. Indeed, it appears from the record that counsel pursued certain strategies for no reason other than to inconvenience opposing counsel, and in some instances may have acted in opposition to his

---

[5] Plaintiff also filed an ex parte application to shorten time on the motion for reconsideration, seeking to have the motion for reconsideration heard before the earlier-filed motion for attorney's fees. (Dkt. 200.)

client's wishes.[6] Accordingly, Drew Sherman and Adli Law shall be liable for $85,357.50 of the $232,927.50 awarded to Defendant Croucier.

**III. Conclusion**

For the reasons stated above, Defendant's Motion for Attorney Fees is GRANTED. Defendant Croucier shall recover $232,927.50 in attorney fees. Plaintiff's counsel Drew Sherman and Adli Law shall be liable for $85,357.50 of that amount.

IT IS SO ORDERED.

Dated: March 11, 2020

DEAN D. PREGERSON
United States District Judge

---

[6] In light of the apparent deterioration of the relationship between Plaintiff and counsel, the court will not recite specific examples here. The record is replete, however, with examples of counsel's unprofessional conduct and communications, ranging from the merely profane and disrespectful to the offensive impugnment of opposing counsel's religious practices and repeated, baseless threats of sanctions.

10